24120. ADAMS *v.* THE STATE.

DECIDED FEBRUARY 7, 1935.

*W. A. Dampier, H. W. Warnock,* for plaintiff in error.
*M. H. Boyer, solicitor-general,* contra.

MacINTYRE, J. At the February term, 1933, of the superior court of Treutlen county the grand jury returned an indictment charging Harvey Adams with the offense of seduction. At the August term, 1933, of that court, the defendant was convicted. Judge J. Saxon Daniel, who presided at the trial of the case and overruled the defendant's motion for a new trial, resigned, and the motion for a new trial was heard and overruled by Judge Eschol Graham, of the Oconee circuit. The record raises three questions,—whether the evidence supports the verdict; whether the court erred in refusing to continue the case because of an absent witness; and whether the court erred in refusing to grant a new trial because of alleged newly discovered evidence.

After testifying that she and the defendant had been friends since childhood and had become engaged to get married, the alleged victim testified in part as follows: "I am seventeen years old. I know . . Harvey Adams. . . He come to see me for three years. . . I liked him, and he said he liked me—said he loved me, and at the time I believed that he did. He promised to marry me . . last March. I had been going with him over two years then. . . I did not have any other sweetheart—no other young man going with me or courting me; he was the only one. . . After we were engaged, I yielded to his lustful embraces and permitted him to have intercourse with me. That was in June after we became engaged. It was . . March, 1932, when we became engaged, and I yielded to him in June, 1932. . . The time for our marriage was set for the first Sunday in October. It was March when we set the date, and after that I yielded to him. I yielded to him because I loved him and I believed he loved me. . . No other man had intercourse with me prior to the time he did. I have never been married. He is the only man that ever had intercourse with me. From that intercourse I became pregnant, and discovered that I was pregnant in July after I first yielded to him. . . I had a child, and it lived five hours. It was born the 17th of March this year. . . The defendant offered to marry me, but he never did marry me. On Christmas day . . he left my home at five o'clock in the morning and said he would be back that day and we would be married, but he never came back, nor did he ever marry me. . . I did not consent when he first asked me. . . He insisted, and told me he would marry me. We were already engaged, and he told me at the moment that he would marry me—repeated it. He said: 'Oh, we will be married in October.' He said: 'If anything gets the matter with you, I will marry you right away.' I let him have intercourse with me for the love and confidence I had in him, and because he told me he would marry me if I got in that condition."

The defense was that the defendant had never had intercourse with the girl, and that a different man was the father of her child. We are quite sure that the jury were warranted in concluding that the transaction was not meretricious and that the defendant was guilty of the offense charged. We hold that the court did not err

in overruling the general grounds of the motion for a new trial. See *Pugh* v. *State*, 7 *Ga. App.* 610 (68 S. E. 309); *Wilson* v. *State*, 58 *Ga.* 328, 330.

Upon the motion for a continuance, the defendant testified that he expected to prove by Dr. Kennedy that Lamar Mixon took Miss B. to his office for an examination; that the doctor examined her, and asked who was responsible for her condition, and she said that it was Lamar Mixon; that the doctor then called Mixon and told him that he couldn't do anything for Miss B., and Mixon said "that was not the first time he had gotten in trouble like this, and he got out of that, and, by God, he would get out of this." It appears from the motion for a continuance that the defendant was represented by Mr. Warnock and Mr. Dampier. During the course of the defendant's examination Mr. Jackson, who appears to have been assisting the State in the prosecution, said: "I would like to know if any of the lawyers excused him." Replying to this inquiry, Mr. Warnock stated in substance that he had not excused the witness, but that he had told him that it would be all right for him to go if the solicitor was "going to carry the case over." Mr. Boyer, the solicitor-general, then stated in substance that he told the witness that he did not want him, but that if counsel for the defendant wanted him, he had better stay. Mr. Boyer concluded his statement with these words: "I can send down there and get him." It appears that after this remark of the solicitor Mr. Dampier made no statement as to whether he excused the witness or not, and neither the defendant nor his counsel said whether or not they wanted the witness sent for, and that Mr. Dampier proceeded to ask the witness the usual statutory questions propounded in such cases.

It appears that upon the hearing of the motion for a new trial the State introduced in evidence a certain writing signed by Judge Daniel and directed to Judge Graham. In this writing Judge Daniel substantially states that the case was called the day before it was tried and at the instance of counsel for the defendant, and he put off the case until the following day in order that the defendant might procure Dr. Kennedy as a witness, and that the witness was in attendance on court the following morning; that during the morning session Dr. Kennedy stated to the court that he knew "nothing whatever about the case that would benefit the de-

fendant," and that all he could testify would be "against said Harvey Adams," and that it would be an injustice to keep him away from his sick patients; that the court told the witness that he could not excuse him, but that he could talk to the defendant's attorneys, and if they would excuse him, "it would be all right;" that the witness came back later and told the court that Mr. Warnock had excused him; that when the motion for a continuance was made, Mr. Jackson asked if any of the attorneys had excused the defendant, and that Mr. Warnock stated in effect that he had not, but "Mr. Dampier, the other attorney for the defendant, made no reply;" and that neither the defendant nor his attorneys "requested the court to send for the doctor, although the court, through the solicitor-general, offered to send for said witness." The exhibit concludes: "After hearing the statement that the witness had been excused by the defendant's attorney, and after one of the attorneys for the defendant failed to state that he had or had not excused said witness, and after they did not request the court to send for him again, I refused the motion for continuance."

Dr. Kennedy in his affidavit deposed that after the court had refused to excuse him, "either the defendant, or his father, or his attorney," stated to the affiant in substance: "If that is what you are going to swear, you need not stay, we will not need you;" and that the affiant then "told them that he was going home, and that no objection whatever was made." Dr. Kennedy lived at Metter, Georgia.

In an affidavit introduced in behalf of the defendant, "H. W. Warnock, sole counsel for Harvey Adams at the time of the conversation hereinafter set forth, and C. C. Adams, father of Harvey Adams, and Harvey Adams," deposed that Mr. Warnock told the witness Kennedy "in the presence of the other affiants, and approved by them, that they would need him as a witness in the case, and that he had better stay, as they could not and would not excuse him, and that the statement of the doctor that he had been excused was untrue."

Under the facts and circumstances stated above, this court declines to hold that Judge Graham abused his discretion in overruling the ground of the motion for a new trial based upon the refusal of Judge Daniel to continue the case because of the absent witness.

We come next to the contention that the court erred in overruling the ground of the motion for a new trial based upon alleged newly discovered evidence. It appears from the supporting affidavit of counsel for the defendant that they merely deposed that they knew nothing of the evidence or facts as set forth in the affidavits of named witnesses "at the time of the trial of the case." The defendant's supporting affidavit is substantially the same as that of his counsel. The Civil Code (1910), § 6086, provides that "it must appear by affidavit of the movant and each of his counsel that they did not know of the existence of such evidence before the trial, and that the same could not have been discovered by the exercise of ordinary diligence." "A new trial will not be granted on account of newly discovered evidence, where it is not made to appear by the affidavit of the movant and each of his counsel that they did not know of the existence of such evidence before the trial, and that the same could not have been discovered by the exercise of ordinary diligence." *Smiley* v. *Smiley,* 144 *Ga.* 546 (3). See also *Taylor* v. *State,* 132 *Ga.* 235, 237; *Trammell* v. *Shirley,* 38 *Ga. App.* 710 (145 S. E. 486). Under the authorities cited, the ground can not be considered.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*